Daniel DOE, by his mother and next-friend, Plaintiff,

v.

**LACONIA SUPERVISORY UNION NO. 30 et al., Defendants.**

Civ. A. No. 74-148.

United States District Court, D. New Hampshire.

June 24, 1975.

Michael E. Chubrich, New Hampshire Legal Assistance, Concord, N. H., for plaintiff.

Charles G. Cleaveland, Asst. Atty. Gen., Concord, N. H., for defendants.

## OPINION

BOWNES, District Judge.

Plaintiff, a nine year old boy, and his mother, as next friend, bring suit against Laconia Supervisory Union No. 30 (Supervisory Union) and the members of the New Hampshire Board of Education in their official capacities only. Jurisdiction is claimed pursuant to 28 U.S.C. §§ 1331 and 1343. This is not a class action.

The first question is whether this court has jurisdiction over the Supervisory Union.

█ Damages, whether they be of a legal or equitable nature, cannot be assessed against a school district in a section 1983 action. *Monroe* v. *Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha* v. *Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Strickland* v. *Inlow,* 485 F.2d 186 (8th Cir. 1973), *rev'd on other ground sub nom. Wood* v. *Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

Because plaintiff's claim concerns the alleged denial of a property or monetary right rather than the denial of a personal freedom right, he must make a prima facie showing that the amount in controversy exceeds $10,000. *Spears* v. *Robinson,* 431 F.2d 1089 (8th Cir. 1970).

█ Plaintiff claims that he has incurred a debt in the amount of $1,030 which is presently due and owing to the Spaulding Youth Center and that the defendants are liable for this obligation, but have refused to pay it.[1] There is no other claim of monetary loss or deprivation and I rule, as a matter of law, that plaintiff has not made a prima facie showing of meeting the amount in controversy requirement of section 1331.

Accordingly, this court does not have jurisdiction over defendant Supervisory Union and the action against it is dismissed.

## ISSUES

There are two basic issues presented to the court:

1. Whether, in light of inadequate legislative funding, defendants have violated the equal protection clause of the Fourteenth Amendment by establishing a "priority system" which provides the most severely handicapped with full supplemental tuition payments without first ascertaining their financial resources; and

2. Whether defendants compute the state average cost of tuition in an arbitrary and capricious manner and thereby debilitate the purpose and effect of N.H. RSA 186–A:8 (Supp.1973).

The plaintiff has moved for partial summary judgment and the defendants have moved for complete summary judgment.

## FACTS

Plaintiff is "emotionally handicapped" as defined by N.H. RSA 186–A:2, subd. III (Supp.1973):

"Emotionally handicapped" shall mean a child up to twenty-one years of age, married or unmarried, who, by reason of internal emotional conflicts, home conditions or general environment, has behavior and/or learning problems or is otherwise unable to make normal social or educational adjustments, but who has sufficient intellectual and emotional capacity to be enabled with clinical diagnosis, proper treatment, training and remedial education, to become a responsible and self-supporting citizen.[2]

---

1. The affidavits of Mr. Nye (Comptroller for the Spaulding Youth Center) and Mr. Paire (Commissioner of the Department of Education) are in conflict as to whether the defendants have, in fact, discharged the $1,030 obligation owing to Spaulding. For purposes of this opinion, I am not deciding that issue and I will assume that the debt is still outstanding.

2. The State admitted at the June 4th hearing that plaintiff was "emotionally handicapped."

Because of his behavior and in accord with a directive issued by the Superintendent of Schools of Supervisory Union No. 30, plaintiff was removed from the Laconia Public School System on May 18, 1971. The affidavit of Alexander J. Blastos (Assistant Superintendent of Schools of Laconia Supervisory Union No. 30) avers that in the latter part of the 1971 summer, plaintiff was readmitted to the public schools, and enrolled in a first grade class.

In September of 1971, plaintiff once again enrolled as a first grade student in the Laconia Public School System. On September 27, 1971, he was transferred to a "primary ungraded" class at the elementary school.

On March 14, 1972, plaintiff received a full scholarship to the Spaulding Youth Center for a two-year period. On March 14, 1974, his scholarship ended. Since the school year did not end until July 30, 1974, plaintiff incurred a debt of $1,030 to the Spaulding Youth Center representing the tuition charge for the spring term.[3] According to the affidavit of Mr. Nye, Comptroller for the Spaulding Youth Center, this amount remains due and outstanding. *See* note 1, *supra*.

On February 28, 1974, plaintiff wrote to the State Board of Education requesting them to discharge the outstanding debt by making a supplemental tuition payment, as required by N.H. RSA 186–A:8 (Supp.1973), to the Spaulding Youth Center. N.H. RSA 186–A:8 provides:

*Tuition of Handicapped Children.* Whenever any handicapped child shall attend any public or private school or program situated within or outside of this state, which offers special instruction for the training or education of handicapped children, and which has been approved for such training by the state board of education, the school district where such handicapped child resides is hereby authorized and empowered and shall appropriate and pay a portion of the cost of such education. The state board of education may assign children to approved schools for handicapped children, as provided in RSA 193:3. Schooling for deaf children may commence at age four. The school district in which each handicapped child resides shall be liable for the tuition of said child. The tuition liability of the school district shall be limited to the state average cost per pupil of the current expenses of operation of the public elementary, junior high or high school for the preceding school year. Pursuant to the provisions of RSA 193:4 and RSA 194:27, this current expense of operation shall include all costs except cost of transportation of pupils, and except capital outlay and debt obligations. The state board of education shall be responsible for any tuition cost which exceeds the state average cost per pupil of current expenses. In Cheshire county, upon request of such a school district, and upon approval by the county convention, the county may raise and appropriate funds to pay a portion of such costs for special education under this section.

On March 11, 1974, Acting Director Jillette denied plaintiff's request on the ground that his condition placed him in a fourth priority status and that the Board was unable to provide him with any financial assistance due to insufficient legislative funding. Mr. Jillette's letter reads in pertinent part as follows:

Expenditure of funds for handicapped children has been based on a priority system reflecting legislative funding over the years. First, priority is given to children who are multi

---

3. The pro rata tuitional charge for the 1974 spring term was $1,588. The City of Laconia, pursuant to N.H. RSA 186–A:8, paid $225 of that amount. In addition, plaintiff received a voluntary partial scholarship from the Belknap County Commissioners in the amount of $333. The amount outstanding is, therefore, $1,030.

handicapped with both sensory and neurological problems. Secondly, priority is given to children with sensory problems. Third, priority is given to children with neurological problems. Following that in priority are trainable mentally retarded, emotionally disturbed and educable retarded.

Our level of funding has not allowed us to extend help to children below the third priority. Essentially, since 1969 our budgets have only allowed us to replace children who are graduating from programs with new children. Practically all the children who appear on the 1972 waiting list still need programming more adequate than they are receiving. My newer waiting lists now contain twice as many children as 1972. (Plaintiff's Ex. A)

On September 4, 1972, plaintiff enrolled in grade four at the Academy Street School in Laconia School District where he has continued to be a full-time student.

### LEGISLATIVE UNDERFUNDING AND THE NEED TO CREATE PRIORITIES

When plaintiff requested supplemental tuition assistance, the language of N.H. RSA 186–A:8 was clear, emphatic, and mandatory: the State Board of Education was to be liable for "any tuition cost which exceeds the state average cost per pupil . . . ."[4] The promise held out in N.H. RSA 186–A:8 to emotionally handicapped children was broken by the legislature's refusal to sufficiently fund the program.[5] The affidavit of Newell J. Paire, Commissioner, Department of Education, avers that the "funds appropriated by the Legislature for the purpose of RSA 186–A:8 are and have always been less than an amount sufficient to totally fund the undertaking therein."

Defendants, acting under the handicap of inadequate legislative funding, established a "priority system" by which N. H. RSA 186–A:8 funds were to be disbursed. The sole qualification for entitlement under this program was the severity of the handicap; those with the severest handicap received first priority. Following an historical pattern of aid disbursement, top priority was given to the deaf, blind, mentally retarded, and the multihandicapped. Accordingly, emotionally handicapped persons were relegated to last position in a long line. Plaintiff's low priority status was compounded by inadequate funding and, consequently, he was totally deprived of his statutory right to supplemental tuition payments.[6] (*See* Exhibit A, *supra*.)

It is important to note that plaintiff does not ask for this court to issue a

4. Effective April 5, 1974, the statute was amended so that it now reads:

> Within the limitations of the appropriated funds made available for the purposes of this section, the state board shall be responsible for such tuition costs which exceed the state average costs per pupil *when the appropriation is sufficient* so as not to jeopardize existing obligations undertaken by said board in assisting handicapped children currently under special instruction or training. N.H.Laws, Ch. 37, § 186–A:8, subd. VI (1974) (Emphasis added.)

The statutory amendment does not change the status of the constitutional issues for the heart of plaintiff's challenge is not the legislature's refusal to appropriate sufficient funds, but the "priority system" established by the defendants in order to disburse the funds. In addition, I do not decide the interesting question whether, as a result of the amendment, all that the State is required to pay is that portion of the tuition for the period March 14, 1974 to April 5, 1974.

5. "And be these juggling fiends no more believ'd.
   That palter with us in a double sense;
   That keep the word of promise to our ear,
   And break it to our hope." Macbeth, v. 7. 48–51.

6. In response to plaintiff's interrogatories, defendants stated that two hundred fourteen physically handicapped children were known to be totally funded; forty-nine intellectually handicapped children were known to be partially funded; and one hundred fifty-four emotionally handicapped children were on a waiting list for the 1973–74 school year.

mandamus to either the defendants or the state legislature ordering it to discharge the debt owing to the Spaulding Youth Center. Instead, plaintiff alleges that N.H. RSA 186–A:8, as administered and applied to him, violates both the due process and equal protection clauses of the Fourteenth Amendment in that:

1. The defendants expend N.H. RSA 186–A:8 funds pursuant to a priority system which discriminates against the emotionally handicapped; and

2. The defendants compute the "state average cost per pupil of current expenses" in an arbitrary and capricious manner.

## EQUAL PROTECTION CLAIM

N.H. RSA 186–A:8 treats all persons who are handicapped, as defined in N.H. RSA 186–A:2, equally. The statute neither creates nor establishes priorities. In fact, preferential treatment is antithetical to the statute's purpose which is "to provide the best and most effective education possible to *all handicapped children in New Hampshire*." N.H. RSA 186–A:1 (Supp.1973) (Emphasis added.)

The purpose and goal of the statute, however, could not be achieved in light of the unavailability of adequate funds and defendants found themselves in an inexorable situation where the demand for funds was much greater than the supply. They were, therefore, forced to promulgate a program which was, in effect, first in need—first in right. The issue is whether this solution can withstand equal protection scrutiny. I find that it can.

Whenever a state statute is alleged to be administered or applied in a manner inconsistent with the dictates of the equal protection clause, the court must determine whether the classification is suspect or the rights affected fundamental. *Dunn* v. *Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

While the right to receive a "public elementary and secondary school education is a state-granted constitutional right," *Vail* v. *Board of Education of Portsmouth School District,* 354 F.Supp. 592, 602 (D.N.H.1973), it is not a "fundamental right" within the parameters of the United States Constitution. *San Antonio School District* v. *Rodriguez,* 411 U.S. 1, 29–39, 93 S.Ct. 1278, 36 L. Ed.2d 16 (1973). Nor can it be said that "emotionally handicapped" is a suspect classification requiring close judicial scrutiny. *Frontiero* v. *Richardson,* 411 U.S. 677, 686, 93 S.Ct. 1764, 36 L. Ed.2d 583 (1973). It is evident that the challenged classification neither creates a suspect classification nor interferes with a fundamental right. In order to withstand equal protection scrutiny, plaintiff must establish that the supplemental tuition program and the manner by which it is implemented is lacking in rationality in light of the statute's purpose.

In *McGowan* v. *Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the Court held that regulatory classifications are presumed to be constitutional unless they are substantiated on grounds "wholly irrelevant to the achievement of the State's objective." In recent years, the Court has suggested that the rational basis test is not as deferential and lax as the language of *McGowan* implies. *See generally,* Gunther, The Supreme Court, 1971 Term, Foreward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection, 86 Harv.L.Rev. 1 (1972).

In *Johnson* v. *Robison,* 415 U.S. 361, 374–375, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974), the Court reiterated the minimal constitutional constraints that the equal protection clause imposes:

"A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall

be treated alike.' *Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 [40 S.Ct. 560, 64 L.Ed. 989] (1920)." *Reed* v. *Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

*See also Weber* v. *Aetna Casualty & Surety Co.,* 406 U.S. 164, 175, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972).

Defendants justify their disbursement scheme on two grounds: (1) that there are not sufficient funds available to discharge the obligations imposed by N.H. RSA 186–A:8, and that those persons with the severest handicap should receive first preference; and (2) that the remaining funds should be applied first to those children who are currently in an educational program. Historically, those children who were deaf, blind, mentally retarded, or multihandicapped received funding priority; defendants claim that their present program is a continuation of the long followed pattern of giving first preference to the severest handicapped.

It is recognized that the Fourteenth Amendment "does not require absolute equality or precisely equal advantages." *Rodriguez, supra,* 411 U.S. at 24, 93 S. Ct. at 1291. Under the rational basis test,

> [the] task is merely to determine whether there is "some rationality in the nature of the class singled out." *Rinaldi* v. *Yeager,* 384 U.S. 305, 308–309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577. *Fuller* v. *Oregon,* 417 U.S. 40, 49, 94 S.Ct. 2116, 2122, 40 L.Ed.2d 642 (1974).

■ Surely, there is a rational basis for the defendants' decision to give preference to those children whose handicap is the severest. Indeed, the heart of plaintiff's constitutional challenge is not that the classification is unconstitutional, but that the defendants grant full supplemental tuition payments to intellectually and physically handicapped children "without first ascertaining the financial resources available to a particular child." (Plaintiff's Memorandum

in Support for Partial Summary Judgment at 5.)

Fleshed out, plaintiff's argument is as follows: The purpose of 186–A:8 is "to provide the best and most effective education possible to all handicapped children in New Hampshire." N.H. RSA 186–A:1. As a consequence of legislative underfunding, numerous qualified handicapped children are denied supplemental tuition payments to which they are statutorily entitled. Plaintiff claims, therefore, that the defendants have a constitutional obligation to level and disburse the financial burden, which has fallen unproportionately on those children whose handicap is not so severe as to give them top priority, by inquiring into the financial resouces of severely handicapped children to determine whether their family can personally bear part of the educational costs. In budgetary terms, plaintiff argues that by taking into consideration the financial resources of the parents, the defendants will be able to operate and administer the supplemental tuition program in a manner which will stretch the availability of the funds to their optimal extent so that as many handicapped children as possible will be given financial assistance.

While plaintiff's argument has merit, it cannot be the basis for an attack on the constitutionality of the present scheme. I agree that the interests and goals of N.H. RSA 186–A:8 might be better furthered if the defendants were to inquire into the financial resources of a family prior to giving them full supplemental tuition. But it is a long jump, and one that I cannot make, to conclude that this obligation is imposed by the United States Constitution. *Cf. James* v. *Strange,* 407 U.S. 128, 133, 92 S.Ct. 2027, 2031, 32 L.Ed.2d 600 (1972), where the Court stated:

> We do not inquire whether this statute is wise or desirable, . . . . Misguided laws may nonetheless be constitutional.

The classification must be upheld provided that it rests "upon some ground of difference having a fair and substantial relation to the object of the legislation . . . ." *Johnson, supra,* 415 U.S. at 374, 94 S.Ct. at 1169. And the present scheme of administration cannot be "condemned simply because it imperfectly effectuates the State's goals." *Rodriguez, supra,* 411 U.S. at 51, 93 S.Ct. at 1306; *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Under the rational basis test, the defendants need not establish that their method of classification or administration is the "least restrictive" approach possible. *Rodriguez, supra,* 411 U.S. at 51, 93 S.Ct. 1278.

I find that there is a rational basis for giving those children with the severest handicap preferential treatment and that, while it might be sounder to inquire into a child's parents' financial resources prior to granting him full supplemental tuition payment, the equal protection clause does not mandate it.

## DUE PROCESS CLAIM

The next issue is whether the defendants compute the "state average cost per pupil" in an unconstitutional manner. The statute in pertinent part provides as follows:

The school district in which each handicapped child resides shall be liable for the tuition of said child. The tuition liability of the school district shall be limited to the state average cost per pupil of the current expenses of operation of the public elementary, junior high or high school for the preceding school year. Pursuant to the provisions of RSA 193:4 and RSA 194:27, this current expense of operation shall include all costs except cost of transportation of pupils, and except capital outlay and debt obligations.[7]

---

7. N.H. RSA 193:4 provides:
   *District Liability for Elementary or Junior High School Tuition.* Any district shall be liable for the tuition of any child who as a resident of the district has been assigned to attend a public school in another district; provided, however, that except under contract the liability of any school district hereunder for the tuition of any pupil shall be limited to the state average cost per pupil of the current expenses of operation of all public elementary schools or junior high schools as defined in RSA 189:25 as amended, as estimated by the state board of education for the preceding school year, or the current expenses of operation of the receiving district for its elementary or junior high schools, as estimated by the state board of education for the preceding school year, whichever is less. This current expense of operation shall include all costs except those made for capital outlay, debt obligations and transportation, provided that to the above may be added a rental charge of two per cent of the capital cost of such elementary or junior high school facilities as may be defined by the state board of education.
   N.H. RSA 194:27 provides:

*Tuition.* Any district not maintaining a high school or school of corresponding grade shall pay for the tuition of any pupil who with parents or guardian resides in said district or who, as a resident of said district, after full investigation by the state board of education is determined to be entitled to have his tuition paid by the district where he resides, and who attends an approved public high school or public school of corresponding grade in another district or an approved public academy. Except under contract as provided in section 22, the liability of any school district hereunder for the tuition of any pupil shall be limited to the state average cost per pupil of the current expenses of operation of all public high schools, as estimated by the state board of education for the preceding school year, or the current expenses of operation of the receiving district for its high school, as estimated by the state board of education for the preceding school year, whichever is less. This current expense of operation shall include all costs except costs of transportation of pupils and except capital outlay and debt obligations, provided that to the above may be added a rental charge of two per cent of the capital cost of such secondary school facilities as may be defined by the state board of education.

Plaintiff alleges that the method of computation produces an unrealistically low figure which is in constitutional conflict with the statute's purpose.

The nub of plaintiff's argument is that the financial cost of educating a handicapped child is much greater than that incurred in educating a nonhandicapped child. With this in mind, plaintiff challenges the present method of calculation on two grounds: first, that the defendants arrive at the average state tuition cost by lumping together the costs of publicly educating both the handicapped and the nonhandicapped and that the final figure does not realistically represent the cost of privately educating handicapped children; and second, that the defendants refuse to include in the computation figure the two per cent rental charge as suggested in N.H. RSA 193:4.

Because there are more normal children attending public schools than handicapped children, plaintiff claims that defendants' method of calculation produces a tuition cost figure which does not accurately reflect the cost incurred in educating handicapped children. It is contended that, because the state average cost is lower than the cost of actually educating handicapped children, defendants have provided school districts with the financial incentive to transfer a handicapped child to another district rather than establish their own special education programs.

Plaintiff urges that defendants must, when computing the state average tuition cost, consider only the costs which are incurred in educating handicapped children. To do otherwise, it is claimed, is contrary to the mandate of the statute and violates the equal protection clause of the Constitution.

Plaintiff's argument does violence to the statute's language. There is nothing in the statute from which it can be reasonably inferred that the legislature intended that the state average cost be computed solely on the basis of what it costs to educate a handicapped pupil. The statute speaks in general terms. If the legislature wanted the cost per pupil to be that which is incurred in educating the handicapped, then it would have so stated. I can find no reasonable basis for reading into the statute words which do not appear therein. In addition, N.H. RSA 193:4 provides the defendants with the discretion whether or not to add the two per cent rental charge to the state average cost. The statute does not demand its addition and neither does the Constitution.

Plaintiff attempts to negate the clear meaning of the statute by asserting that the computation formula is violative of the Fourteenth Amendment because "it necessarily discourages local school districts from establishing special education programs." (Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment at 3.)

Plaintiff's argument is without constitutional merit. For reasons stated previously, defendants do not have to compute the state average cost in the least restrictive manner. Moreover, the statute as designed and administered helps to alleviate the burden of private education costs for handicapped children and thereby furthers the statute's purpose. By expending the same amount of funds on each child's education, whether they be handicapped or not, the statute treats all children within the school district equally. Although this figure may not realistically reflect the costs associated with educating a handicapped child, this factor, standing alone, does not invalidate the method of computation. As structured, the local school district pays that portion of the private tuition cost which is reflective of the state average tuition cost. It cannot be said that this procedure is not rationally related to the state's objective in educating its handicapped children.

Plaintiff has, in essence, an administrative dispute with the defendants. Principles of federalism and constitutional adjudication mandate that this

dispute be resolved in either the State courts or the State legislature. For the foregoing reasons, defendants' motion for summary judgment is granted.

In arriving at my decision, I have not read nor given any consideration to defendants' memorandum in support of its motion for summary judgment which was filed on June 17, 1975, because it was filed late.

So ordered.