411 F.Supp. 46 (1976)
The CUYAHOGA COUNTY ASSOCIATION FOR RETARDED CHILDREN & ADULTS et al., Plaintiffs,
v.
Martin ESSEX, Individually, and as Superintendent of the State of Ohio, Department of Education, et al., Defendants.
No. C74-587.
United States District Court, N. D. Ohio, E. D.
April 5, 1976.
*47 *48 *49 William D. Ginn, James T. Crowley, Eric T. Davis, Thompson, Hine & Flory, Cleveland, Ohio, for plaintiffs.
George Stricker, Asst. Atty. Gen., Columbus, Ohio, for defendant Kenneth Gaver.
Richard J. Dickinson, Asst. Atty. Gen., Columbus, Ohio, for all other named defendants.
Before WEICK, Circuit Judge, and GREEN and THOMAS, District Judges.

MEMORANDUM AND ORDER
BEN C. GREEN, District Judge.
This action presents a wide-ranging attack upon the Ohio system of education and/or training for mentally handicapped school-age children. Plaintiffs have asserted constitutional challenges to the statutes and regulations pertinent thereto on two grounds. It is alleged that the retarded are denied equal protection in that they are not afforded educational or training opportunity on the same basis as that accorded all other children of school age. It is further alleged that the retarded are denied due process in the classification procedures provided for determination of the education and/or training which they may receive. Plaintiffs seek a declaratory judgment that a number of Ohio statutes, and regulations promulgated thereunder, are unconstitutional and mandatory orders upon the defendants directing that they create and provide an educational system for the retarded upon the same terms as that offered to all other school-age children.[1]
This action is now before the Court upon the parties' cross-motions for summary judgment. Under these motions, with the limited record before the Court, the issues for consideration must be restricted to matters of facial constitutionality. Any questions of deprivation of constitutional rights by the manner in which the statutes and/or regulations are applied, if cognizable under the present pleadings and between the present parties, would require an evidentiary proceeding for development of the facts pertinent thereto.
It is appropriate to first deal with plaintiffs' equal protection arguments, as the issues thereunder are primary and basically arise under the Ohio statutes themselves. The issues as regards due process in the classification procedures, while presenting questions of constitutional dimension, may be considered to be secondary and arise under the regulations adopted under the statutes.
Plaintiffs contend that under the Ohio statutes all "normal" children of school age are subject to compulsory and mandatory participation in the free public educational system, but that the retarded are excluded therefrom. It is further contended that the retarded are offered only a discretionary and voluntary participation, with different programs applicable to children with I.Q.'s between 50 and 80 and those with I.Q.'s under 50. In essence, plaintiffs argue that the Ohio statutes create a three-tiered stratification, consisting of children with I.Q.'s over 80, those with I.Q.'s between 50 and 80 and those with I.Q.'s below 50, and that the latter two groupings are not granted the same rights and privileges and do not have imposed upon them the same obligations as does the first. These alleged differences are asserted as violative of the Fourteenth Amendment's guarantees, remediable under 42 U.S.C. §§ 1981 and 1983.
The question thus becomes whether the Ohio statutes do create the classifications as contended by plaintiffs, and, if so, are such classifications constitutionally impermissible.
*50 At the outset, the interests with which we are concerned must be defined. While the Supreme Court has spoken of education as "perhaps the most important function of state and local governments", Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954), recognizing that "in these days it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education," ibid., the fact remains that education has not been accorded status as a constitutionally guaranteed right, San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), but rather is deemed a property right, Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Once a state has determined to establish and maintain a system of free public education it must do so in a framework which does not deny to its children constitutionally protected rights. Goss v. Lopez, supra; Brown v. Board of Education, supra.
It therefore follows that in establishing and administering a public education system a state may incorporate classifications regarding the children to be educated thereunder, so long as such classifications can withstand constitutional scrutiny. The standard which this Court determines must be met under the instant record is the "rational basis" test. San Antonio School District v. Rodriguez, supra, 411 U.S. at pp. 39-40, 93 S.Ct. at p. 1300, 36 L.Ed.2d at pp. 46-47; Doe v. Laconia Supervisory Union No. 30, 396 F.Supp. 1291, 1296 (D.N.H., 1975); Lopez v. Williams, 372 F.Supp. 1279, 1298 (S.D.Ohio, 1973); Knight v. Board of Education of City of New York, 48 F.R.D. 108, 111 (E.D.N.Y., 1969). See also, Graham v. Richardson, 403 U.S. 365, 371, 91 S.Ct. 1848, 1852, 29 L.Ed.2d 534, 541 (1971); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501 (1970). In order to invalidate a classification under the "rational basis" test it must be shown that it is arbitrary, does not rest upon some ground of difference having a fair and substantial relation to the object of the legislation, or that no state of facts exists which would reasonably support a legitimate state interest therein. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).
The State of Ohio has embarked upon the task of providing a free public education for its children pursuant to Sections 3313.48 and 3313.64 of the Ohio Revised Code, which, in pertinent part, provide that:
The board of education of each city, exempted village, local, and joint vocational school district shall provide for the free education of the youth of school age within the district . . .

O.R.C. § 3313.48
The schools of each city, exempted village, or local school district shall be free to all school residents between five and twenty-one years of age . . . O.R.C. § 3313.64
It is certain provisions of Chapters 3321 (School Attendance), 3323 (Special Classes), and 5127 (Training of Mentally Retarded Children), of the Ohio Revised Code which plaintiffs contend create constitutionally discriminatory access to the Ohio system of free public education. Those statutes, in pertinent part, provide as follows:
O.R.C. § 3321.01
A child between six and eighteen years of age is "of compulsory school age" for the purpose of sections 3321.01 to 3321.13, inclusive, of the Revised Code.
O.R.C. § 3321.02
Every child actually resident in the state shall be amenable to the laws relating to the compulsory education . . .
O.R.C. § 3321.03
Except as provided in this section, the parent, guardian, or other person having the care of a child of compulsory school age which child has not been *51 determined to be incapable of profiting substantially by further instruction shall cause such child to attend a school . . . Every child of compulsory school age who has not been determined to be incapable of profiting substantially by further instruction shall attend a school . . . until one of the following occurs: . . .
(C) The child is excused from school under standards adopted by the state board of education pursuant to section 3321.04 of the Revised Code. (emphasis added)
O.R.C. § 3321.04
Every parent, guardian, or other person having charge of any child of compulsory school age . . . who has not been determined to be incapable of profiting substantially by further instruction, must send such child to a school . . .. (emphasis added)
O.R.C. § 3321.05
A child of compulsory school age may be determined to be incapable of profiting substantially by further instruction.
The state board of education may prescribe standards and examinations or tests by which such capacity may be determined, . . . but the capacity of a child to benefit substantially by further instruction shall be determined with reference to that available to the particular child in the public schools of the district in which he resides, and no child shall be determined to be incapable of profiting substantially by further instruction if the superintendent of public instruction, pursuant to board standards, finds that it is feasible to provide for him in such district, or elsewhere in the public school system, special classes or schools, departments of special instruction or individual instruction through or by which he might profit substantially, according to his mental capacity as so determined . . .
. . . If a child is determined to be incapable of profiting substantially by further instructions, such determination shall be certified by the superintendent of public instruction to the superintendent of schools of the district in which he resides, who shall place such child under the supervision of a visiting teacher or of an attendance officer, to be exercised as long as such child is of compulsory school age . .
Any determination made under this section may be revoked by the state board of education for good cause shown.
A child determined to be incapable of profiting substantially by further instruction shall not hereafter be admitted to the public schools of the state while such determination remains in force.
O.R.C. § 3323.01
The state board of education may grant permission to any board of education to establish and maintain classes for the instruction of . . . mentally handicapped persons over the age of five; and to establish and maintain . . . special instructional services, including home instruction . . . for all other persons over the age of five whose learning is retarded, interrupted or impaired by . . . mental handicaps . . .
O.R.C. § 3323.011
Approval of state funds for the operation of programs and services provided pursuant to section 3323.01 of the Revised Code shall be contingent upon a comprehensive plan for special education approved by the state board of education no later than July 1, 1973. The state board of education shall not approve a school district's plan unless the plan proposed meets the educational needs of handicapped children in that school district and other school districts in the same general area. Each school district shall submit such a plan to the state board of education by December 1, 1972. . . .
In approving the organization of special education, the state board of education shall provide that no school district *52 be excluded from the statewide plan. . . .
O.R.C. § 3323.04
Upon petition by the parents or guardians of . . . eight educable mentally retarded children, in any school district, of the age named in division (A) of section 3323.01 of the Revised Code, the board of education of such district shall apply to the state board of education for permission to establish a special class for such children . . .
O.R.C. § 5127.01
The chief of the division of mental retardation and developmental disabilities, with the approval of the director of mental health and mental retardation, shall establish in any county or district a training center or workshop, residential center, and other programs and services for the special training of mentally retarded persons, including those who have been adjudged by the proper authorities to be ineligible for enrollment in public schools under section 3321.01 or 3321.05 of the Revised Code and who are determined by the division of mental retardation and developmental disabilities to be capable of profiting by specialized training. Special attention shall be given to the establishment of a training program for the mentally retarded for the purpose of enabling them to become accepted by society and to find employment in the structure of society to the extent that they may be fitted therefor. The chief is the final authority in determining the nature and degree of mental retardation, shall decide all questions relative or incident to the establishment and operation of each training center or workshop, residential center, and other program or service, determine what constitutes special training, promulgate all rules and regulations . . . governing the approval of mentally retarded persons for such training . . . and approve the current operating costs of such program.
As used in sections 5127.01 to 5127.04, inclusive, of the Revised Code, a "mentally retarded person" means:
(A) A person who has been determined by the proper authorities to be ineligible for enrollment in a public school because of mental retardation of such nature and to such degree that the person is incapable of profiting substantially by any educational program which should be provided by such public school; . . .
O.R.C. § 5127.02
Upon petition to the county board of mental retardation in any county by the parents or guardians of eight or more mentally retarded persons of similar handicap, who are ineligible for enrollment in public school because of . . . mental retardation, the board shall forward such petition to the chief of the division of mental retardation and developmental disabilities. The chief shall take such action and make such order as he deems necessary for the special training of the mentally retarded, to the extent that funds are available.
It is plain on the face of the foregoing statutes that they do not, as contended by plaintiffs, classify children of compulsory school age by I.Q. for purposes of inclusion or exclusion from the free public school system. The statutory basis for disqualification from the system of free public education and for eligibility for admission into the training program for the mentally retarded is a determination that the particular child is "incapable of profiting substantially from further instruction".
In the Court's opinion, such a classification is sufficient to meet the rational basis test. In dealing with a system of mandatory free public education a state which determines that only those children who can derive actual benefit from a broadly based public educational system are to be included therein cannot be said to be acting arbitrarily. Statutory recognition that there are children for *53 whom only training by persons specially qualified therefor will be of any benefit is not invidious discrimination. Whether the manner in which the State of Ohio has determined to provide for the training of children who are incapable of being benefited by instruction in the context of general or special education within the public school system is appropriate is a matter which will be considered hereinafter.
Having determined that the statutory standard for dismissal from the public school system is constitutionally permissible, the Court must now address the contention that under the statutes all children with a mental disability are automatically relegated to a discretionary education. The Court finds that, contrary to plaintiffs' allegation that the system is totally discretionary, educable mentally retarded children who require special education are within the compulsory educational system.
Section 3321.05 of the Revised Code, in defining who may be determined to be incapable of substantially profiting from further instruction, specifically provides that a child who "might profit substantially, according to his mental capacity" by instruction in "special classes" may not be excluded from the compulsory free public school system. Section 3323.01 speaks of establishing classes for children whose abilities are "retarded, interrupted or impaired". Section 3323.04 refers to establishment of classes on behalf of "educable mentally retarded" children. If there was any question as to whether such children are within the compulsory system it would certainly be resolved by reason of Regulation EDb-215-07 of the Ohio Department of Education, which includes as a criteria for eligibility for enrollment in special education units for educable mentally retarded children that the child "is capable of profiting substantially from instruction as determined by an evaluation administered by a qualified psychologist using multi-factored assessment procedures." Based on the foregoing, there can be no doubt that any child who has not been disqualified pursuant to O.R.C. § 3321.05 remains within the compulsory free public school system.[2]
By the same token, the Court does not agree with plaintiffs' arguments that the establishment of special classes is a discretionary matter with the state. That contention is predicated upon the fact that Section 3323.01 provides that the state board of education may grant permission for such a program. In the Court's opinion Section 3323.01 cannot be read alone, and when construed with Sections 3323.011 and 3323.04 a conclusion can be reached which avoids the constitutional vice alleged by plaintiffs. If the statutes can be so construed, it is this Court's obligation to do so. United States v. 12 200-Ft Reels, 413 U.S. 123, 130, 93 S.Ct. 2665, 2670, 37 L.Ed.2d 500, 507 (1973); Driscoll v. Edison Light & Power Co., 307 U.S. 104, 115, 59 S.Ct. 715, 720, 83 L.Ed. 1134, 1142 (1939); Daylo v. Administrator of Veterans' Affairs, 163 U.S.App.D.C. 251, 501 F.2d 811, 819 (1974).
Section 3323.011 of the Ohio Code, which required the promulgation by the state board of education and each school district in Ohio of a comprehensive plan for special education prior to the institution of this action, provides that "in approving the organization of special education, the state board of education shall *54 provide that no school district be excluded from the statewide plan." This Court believes that if the state board of education was to refuse to grant an application for special education classes by a local school district pursuant to O.R.C. § 3323.04, such act would constitute an exclusion from the statewide plan of special education prohibited by Section 3323.011. It is noted that in response to a request for admissions it is stated that such "permission has never been denied by the State Board of Education upon an application by a local board of education." As this Court views the overall statutory scheme, it is susceptible of the construction that Section 3323.011 required all local school districts to adopt a plan, which is not to be immediately implemented, for special education classes; that before such classes can be established permission must be secured from the state board of education pursuant to Section 3323.01; that Section 3323.04 mandates that upon petition of the parents of eight mentally retarded children the local board must apply for establishment of such classes, and; that Section 3323.011 requires that permission to implement the plan be granted if the school district's plan meets the statutory and regulatory requirements for a proper plan. Under such a system the only discretion in the state is to determine whether the local district's plan is a proper one. If it was not, the state board of education could require the submission of an amended plan meeting the state's requirements.
There is one further argument of plaintiffs regarding the validity of the Ohio statutes as regards the status of the educable mentally retarded which must be considered. It is urged that the statutory scheme is rendered constitutionally impermissible by those portions of Section 3321.05 which make the determination of capability to "benefit substantially by further instruction" dependent upon the availability of instruction "to the particular child in the public schools of the district in which the child resides" or upon a determination of the superintendent of public instruction as to the "feasibility" of providing alternative instruction.
Again, if possible, this statute must be construed in such a manner as to avoid the alleged constitutional infirmity. The Court believes it can be so construed.
Section 3321.05 requires that a child shall not be excluded from the system of public education if the superintendent of public education finds it feasible to provide for such child:
. . . in such district, or elsewhere in the public school system, special classes or schools, departments of special instruction or individual instruction through or by which he might profit substantially, according to his mental capacity.
The statute has inherent in it the question of whether financial considerations may be taken into account in determining feasibility.
This Court does not believe that the question, left open by Rodriguez, supra, 411 U.S. at 37, 93 S.Ct. at 1299, 36 L.Ed.2d at 45, whether denial of access to educational facilities to a class of children can be sustained upon a demonstration of the inability of a particular school district to fund special programs need be resolved in this case.[3]
There exist statutory provisions within the Ohio Revised Code which should operate to make alternative sources or instruction financially feasible throughout the state. These provisions include cooperative school districts for purposes of special education, O.R.C. §§ 3313.841 and 3323.011; payment of tuition and transportation for special instruction, § 3323.10; allocation of excess cost for special instruction outside a district, § 3323.11; payment of boarding expenses, § 3323.12; *55 transportation to be provided to and from school or special education classes for educable mentally retarded children, § 3327.01; and home instruction, § 3323.05. Thus it would appear highly unlikely that no educational environment would be available for a child whose capabilities are such that "substantial profit from further instruction" could be derived.
The Court has examined the regulations pertaining to inclusion or exclusion from the public school system (EDb-215-13C) and participation in the special education classes (EDb-215-07B and C), and finds that each is keyed to the statutory standard of ability to profit substantially from further instruction.[4] Thus, for purposes of classification, the regulations carry forward the constitutionally permissible standard of the statute.
The finding that the standard of the Ohio statutes for dismissal from the compulsory school system is appropriate and that the educable mentally retarded are not excluded thereunder does not end the Court's inquiry as to equal protection under the Ohio statutes. While the Court has found fallacious the basic premise of plaintiffs' attack on the overall educational and training system for the mentally handicapped (that the law created a classification by level of I.Q.), there is implicit in plaintiffs' position the contention that the statutes pertaining to training of the mentally retarded. Chapter 5127 of the Revised Code, are in and of themselves unconstitutionally discriminatory by virtue of their permissive and discretionary character.
While it might appear from the language of Section 5127.01 of the Revised Code that there "shall" be established in any county "programs and services for the special training of mentally retarded persons" that the statute imposes a duty upon the state to create such facilities for all persons in need thereof, the overall import of Chapter 5127 and of such of the regulations adopted thereunder as are before the Court indicates that affording of the programs and services contemplated by Section 5127.01 is discretionary with the state and dependent upon available funding.[5] Consistent with the view that training programs may not be immediately available to all who could benefit therefrom is the priority given in Section 5127.01 to "the establishment of a training program for the mentally retarded for the purpose of enabling them to become accepted by society and to find employment in the structure of society to the extent that they may be fitted therefor." Additionally, by regulation multi-handicapped children and children with lesser intellectual levels would appear to have greater problems in gaining admission, while children who are not acceptably toilet trained will not be admitted. See, respectively Regulations MHh-1-18(H), MHh-1-05(A) and MHh-1-18(B)(2) and (F).
*56 For purposes of this ruling, the Court will assume that the Ohio system of training for the mentally retarded is discretionary in both its general and individual availability, and structured so that the greatest emphasis is placed upon aiding individuals with, relatively speaking, greater intellectual capacity. The Court does not consider such a system to be constitutionally defective.
In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court addressed itself to certain Maryland statutes which dealt unequally with a class of potential welfare recipients. The Court stated:
In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 [377]. "The problems of government are practical ones and may justify, if they do not require, rough accommodationsillogical, it may be, and unscientific." Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70, 33 S.Ct. 441, 443, 57 L.Ed. 730 [734]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 [399].
To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard. . . .
Continuing, the Court noted that the Equal Protection Clause is not violated by legislation which is predicated upon a "solid foundation" of legitimate state interest and that the Constitution does not require that a state must choose between attacking every aspect of a problem or not attacking the problem at all. After reiterating that the key is whether the state's action is "rationally based and free from invidious discrimination", the Court concluded:
We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients. 397 U.S. 485, 486-487, 90 S.Ct. 1162, 25 L.Ed.2d 503.
In this Court's opinion the foregoing considerations as to the state's latitude in dealing with social problems must be deemed applicable to the issue of Ohio's training system for the mentally retarded. In contrast to the public education system to which the state has by its basic legislation unconditionally committed itself so that economic considerations should not be a basis for exclusion of children from that system, Ohio has only undertaken to train the mentally retarded on a potentially limited basis *57 commensurate with the funds allotted by the legislature for that purpose and has vested discretion in a responsible official to determine the manner in which such funds can best be used. While the Court may well agree with plaintiffs that sufficient funding should be procured so all persons suffering from mental disability can be given as much training as would be of benefit to them, or that the resources available should be used in whatever proportions necessary to reach all persons in need of training, this Court cannot substitute its judgment for that of the Ohio legislature in determining the manner in which this social welfare program is best administered.
It must be recognized that programs available pursuant to Chapter 5127 are not exclusively for the benefit of children of compulsory school age excluded from the public schools. Section 5127.01(B) specifically provides for enrollment of persons not of school age determined "to be unemployable because of mental retardation of such nature and to such degree that special training is necessary." Similarly, the regulations before the Court have provisions relating to persons not of school age. Consequently, whatever flaws may exist in the training system are not restricted to children of compulsory school age, with whose rights the Court is concerned in this litigation.
It is this Court's conclusion that Chapter 5127 of the Ohio Revised Code and the regulations adopted thereunder are sufficient to withstand plaintiffs' claim that as to the interests they represent there is a classification violative of the Equal Protection Clause.
Turning now to those aspects of this action relating to plaintiffs' claims of denial of due process, the issues presented thereunder relate to certain regulations of the Ohio Department of Education and the Ohio Department of Mental Health which govern on procedural matters relating to classification and placement. Plaintiffs' constitutional challenges pertain to the standards applicable to placement of a student in special education classes, exclusion of students from the compulsory public school system, and exclusion of individuals from training programs.
Defendants do not deny the proposition that children within a compulsory public school system must be accorded due process in matters materially affecting their education. Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). It is defendants' position that their regulations are adequate to meet the minimum requirements of due process.
Regulation EDb-215-07 of the Ohio Department of Education covers the matters of eligibility for and assessment and placement of students in special education classes. In pertinent part it provides as follows:
B. Eligibility
1. Any child who meets the following requirements shall be eligible for and may be placed in a special education unit for educable mentally retarded children:
a. Is of legal school age.
b. Is capable of profiting substantially from instruction as determined by an evaluation administered by a qualified psychologist using multi-factored assessment procedures.
c. Is in the general intelligence range of 50 through 80 as determined through an individual examination by a qualified school psychologist.
d. Cannot meet the academic and social behavioral expectations of the regular instructional program in that school because of a significant performance deficit in the basic educational areas as determined through an educational assessment that includes standardized test and/or classroom observational data which indicates a long term need for a modified educational program.
C. Assessment and Placement
1. The superintendent of the school district of attendance is responsible for the assignment of pupils to approved units.

*58 2. The school district shall have written criteria to determine eligibility for, and placement of, students in approved programs and services. Such criteria shall include:
a. Standards adopted by the State Board of Education.
b. Assessment of achievement, adjustment and social adaptability.
c. Provisions for including additional criteria, when relevant, to the unique characteristics of the school populations.
d. Priorities to establish placement of students on the basis of the individual student's need.
e. Process for providing an opportunity for a conference with parent(s) or guardian(s) prior to placement of any student in approved programs or services.
f. Provisions for a systematic procedure to re-evaluate students in approved programs to assess their progress, current status and future educational needs.
In the Court's opinion the foregoing regulation is deficient in four regards. While it requires the opportunity for a conference prior to a placement, it does not oblige the school authorities to give the parent or guardian notice of the basis upon which the proposed placement is founded, affords no opportunity for review of the evidence in support thereof, grants no right to introduce into the record additional material which might be appropriate to an evaluation of the child's academic capabilities, and does not guarantee that the superintendent of the school district, the final authority on placement, will receive all pertinent information prior to rendering a decision. While due process is not an inflexible standard, it requires at the least an effective opportunity to be heard on the matter at hand. In order to have an effective hearing the persons involved must be given notice of what action is to be taken and why, an opportunity to present additional material pertinent thereto, and an assurance that evidence reasonably calculated to lead to a reliable determination of the factual issues involved will come before the person rendering the final decision. Lopez v. Williams, 372 F.Supp. 1279, 1300-1301 (S.D.Ohio, 1973), aff'd Goss v. Lopez, supra; Mills v. Board of Education, 348 F.Supp. 866, 875 (D.C., 1972); Esteban v. Central Missouri State College, 277 F.Supp. 649, 651 (W.D.Mo., 1967).
The regulation governing legal dismissal from school attendance, EDb-215-13, shares the vice of EDb-215-07. While the criteria for exclusion are more than adequate, the notice requirements and opportunity for input are sorely deficient.
Dismissal from the public education system must be approved by the Superintendent of Public Education. The application for dismissal must be signed by the superintendent of the school district in which the child resides. No application for dismissal can be submitted unless a committee is formed to evaluate all pertinent information about the minor and make recommendations concerning the most advantageous placement possible. The only portion of the regulation regarding communication with a parent or guardian by anyone related to the dismissal procedures is subdivision C-6-c which provides:
The chairman of the committee shall have the responsibility for seeing that an opportunity for a conference is made available to the child's parent(s) or guardian(s) with school personnel having information pertinent to the school's recommendations.
Such procedure is meaningless to a fair determination as to whether a child should be dismissed from school. The conference provided by the regulation is not with any of the persons specified as a part of the decision-making process and there is no requirement that the results of the conference be transmitted to such persons. Absent a requirement of notice of the grounds upon which dismissal is being sought, a right to review the material to be submitted in support of such application and respond thereto *59 or supplement the same, and some assurance that all pertinent information will be placed before the decision makers the required conference is a hollow formality.
It therefore follows that Regulations EDb-215-07 and EDb-215-03 must be supplemented to afford at least the minimal due process rights enunciated herein. Due process requires that a child whose educational opportunity is to be affected be afforded equal opportunity with that of the school authorities to make a presentation regarding classification and/or dismissal. Defendants will be ordered to submit proposed regulations to that end within ninety days of entry hereof.
This leaves for consideration the Ohio Department of Mental Health regulations. While the Court has found that the discretionary aspects of the Ohio statutes dealing with training of the mentally retarded do not offend any constitutional guarantees of equal protection applicable to children of compulsory school age, once such children are brought within the system they cannot be dealt with summarily.
The regulations which have been placed before the Court under the instant motions are MHh-1-04, MHh-1-05, MHh-1-06, MHh-1-18 and MHh-1-20.[6]
Of these, Regulation "05" contains the standards of eligibility for the Community Class Program. Those persons eligible must:
1. Be at least six years of age by October 31 of the current year and not more than twenty-one years of age;
2. Be excluded from public schools if within compulsory school ages;
3. Have a minimum physical, social and intellectual level of development equal to that of an average three-year-old child;
4. Be toilet trained.
Regulation "06" provides that "all children admitted to the Community Class Program shall be on a trial basis" and provides for the dismissal of participants from the Program:
(E) If the social, physical, or mental status of a child deteriorates, he may be excluded after a conference with the parents, teacher, and administrative representative of the County Agency.
We must construe this regulation so that it meets constitutional standards if the language so permits. The Court believes it can be fairly read to mean that if a child's condition deteriorates below the minimum eligibility requirements of Regulation "05", he may be dismissed. Since Regulation "05" provides concrete standards for admission, Regulations "05" and "06" read together can be construed as providing standards for exclusion which facially comport with due process standards. Therefore, the Court concludes that the two regulations so construed are constitutionally sufficient.
Regulation "18" contains admission standards for the Workshop Program. Those eligible must:
1. Be beyond compulsory school age or sixteen years of age and ineligible for enrollment in the Community Class Program or the public schools;
2. Have a minimum physical, social and intellectual level of development equal to that of an average five-year-old child;
3. Be toilet trained.
Regulation "20" provides for the dismissal of participants from the Workshop Program in substantially the same language as quoted above from Regulation "06". Consequently, Regulation "20" can be read so as to provide for dismissal only when the participant's condition deteriorates below the minimum eligibility requirements of Regulation *60 "18". These standards comport with due process and the Court adopts such constitutionally sufficient construction as appropriate.
However, none of the foregoing regulations provide adequate procedural safeguards to protect the program participant in the determination of whether his condition has deteriorated below the specified standards. Regulations "06" and "20" merely provide that a conference with parents is mandatory prior to dismissal and that a record of such conference be kept. The absence in these regulations of any requirements of notice as to the basis upon which exclusion may be sought, opportunity for review of the underlying material, availability of input, and a guarantee that all relevant information will reach the person responsible for final decision render the same inadequate. The defendants will be ordered to submit proposed regulations to meet such deficiencies within ninety days hereof.
In summary, the Court finds as follows:
1. That the basic standard of classification of the Ohio educational statutes excluding from the free and mandatory public school system only those children who have been found incapable of profiting substantially by further instruction does not unconstitutionally discriminate against plaintiffs or the class they represent.
2. That under the Ohio statutes the State of Ohio is obliged to utilize all resources available to it in order to provide an education to all children who might profit substantially by further instruction, according to their mental capacity as determined through proper examination and testing.
3. That all children in Ohio of compulsory school age who have not been dismissed from school under the statutory standard are subject to compulsory education, and it is the duty of the defendants to enforce the provisions of Chapter 3321 of the Ohio Revised Code as to such children.
4. That if, as plaintiffs contend, there are children of compulsory school age who have not been determined to be capable of substantially profiting from further instruction who are not within the public school system further evidence of such fact is required; if such contingency exists and can be shown to be as a consequence of a statewide policy fostered or condoned by these defendants relief may be ordered in this action; if such contingency exists but is not as a consequence of a statewide policy fostered or condoned by these defendants but is as a consequence of acts of particular school districts relief therefrom is not available in this forum but must be sought in the state courts against such districts.
5. That if children of particular I.Q. levels are being "rubber-stamped" into special education and/or out of the public school system without regard for the detailed standards developed for classification and/or dismissal and that such action is as a consequence of statewide policies fostered or condoned by defendants such course of conduct might constitute denial of equal protection under the relevant statutes and regulations as applied and be remediable in this action, but proof of such condition will require further evidence; if such condition prevails in certain school districts, but not as a consequence of acts for which defendants may be held responsible, relief therefrom must be sought in the state courts against those responsible for such acts.
6. That Ohio Department of Education Regulations EDb-215-07 and EDb-215-03 are constitutionally deficient in that they do not contain proper provisions regarding notice, opportunity for review of *61 the material upon which proposed action thereunder is to be taken, opportunity for input by the persons affected, and guarantees that all relevant material will be before the person charged with responsibility for final decision.
7. That the Ohio statutes for training of the mentally retarded, Chapter 5127 of the Ohio Revised Code, do not deny to plaintiffs or the class they represent equal protection.
8. That Ohio Department of Mental Health Regulations MHh-1-05, MHh-1-06, MHh-1-18 and MHh-1-20 are constitutionally deficient for basically the same reasons as apply to the Department of Education regulations as specified in paragraph 6 above.
The cross-motions of the parties for summary judgment are granted in part and denied in part in accordance with the terms of this memorandum. Defendants shall within ninety days hereof submit to the Court, with service upon plaintiffs, proposed supplemental regulations as set forth herein. Plaintiffs shall within sixty days hereof advise the Court whether they intend to go forward as regards the issues which this Court has indicated required evidentiary hearing for determination.[7]
IT IS SO ORDERED.
NOTES
[1] An order was previously entered certifying this suit as a class action pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, on behalf of all residents of the State of Ohio between the ages of six and eighteen, who are eligible for free, mandatory education, but who have been denied that educational opportunity, or a training opportunity commensurate with their own capabilities, simply because of their mental disabilities.
[2] A further statutory recognition that the retarded remain within the compulsory school system is found within Chapter 3331 of the Ohio Code, which deals generally with release from school by securing an "age and schooling certificate". Section 3331.01 in part provides that such a certificate may be issued to a child over sixteen years of age who has satisfactorily completed "a special education program adequate to prepare students for an occupation". Section 3331.03 provides for issuance of a "nonstandard" certificate for a child over fourteen who has been disqualified pursuant to O.R.C. § 3321.05. Section 3331.04 contains special provisions for a child over sixteen "who is unable to pass a test for the completion of the work of the seventh grade and who is not so below normal in mental development that he cannot profit from further schooling."
[3] While the complaint alleges that the individual plaintiffs are excluded from public education for a variety of reasons, there are no allegations that inability of the school districts involved to fund the needed programs is the cause of such exclusion.
[4] It would appear that plaintiffs' contention that the mentally retarded are classified by I.Q. derives from the fact that regulation EDb-215-07 includes as one of the criteria for admission to special education classes that the child have an I.Q. between 50 and 80, that regulation EDb-215-13 has specific provisions for children with I.Q.'s below 50, and regulation MHh-1-18(G) provides for admission of "individuals with an I.Q. of above 50 legally excluded from the public schools" to training classes on an individual basis. Those regulations, however, are supplementary to, and not in conflict, with the statutes and regulations in which the basic standard for classification are contained. If it should develop that there is a state-wide practice of "rubber-stamping" all children with I.Q.'s below 80 out of regular classes and all children with I.Q.'s below 50 out of special education classes, and that such practice is fostered and/or condoned by the defendants in this action a question of denial of equal protection under the statutes and regulations as applied could be presented. That question is not presently before the Court, and could not be resolved on this record. If such practice exists but not on a state-wide basis or by virtue of acts attributable to these defendants it could not be remedied in the context of this suit.
[5] It is noted, however, that plaintiffs' requests for admissions seeking the concession that based on the controlling regulations defendants "on occasion have excluded children of compulsory school age from their training program" has been denied.
[6] Regulations MHh-1-05 and MHh-1-06 relate to Community Class Programs. Regulations MHh-1-18 and MHh-1-20 relate to Workshop Programs.
[7] While not a matter of record herein, effective November 29, 1975, Congress enacted Public Law 94-142, the Education for All Handicapped Children Act of 1975, 89 Stat. 773. It would appear that if the State of Ohio avails itself of participation under that Act many of the issues herein may well be mooted. The Court is advised that there is now pending in the Ohio legislature a bill (S.B. 455) which, if adopted, could make Ohio eligible to participate under P.L. 94-142. Consequently, if the parties wish to stipulate a limited extension of the times specified in this paragraph in order to determine whether the Ohio legislature will act to bring the state within P.L. 94-142 and the effect of such legislation on the issues of this suit the Court will accept such a stipulation.